The **VILLAGE BANK**, a banking corporation organized under the laws of the State of Oklahoma and the First National Bank of Britton, a national banking association, Plaintiffs,

v.

James E. **SMITH**, Comptroller of the Currency of the United States, and Quail Creek Bank-National Association, a national banking association, Defendants.

No. Civ–73–483–C.

United States District Court, W. D. Oklahoma.

Jan. 29, 1975.

Keith McMillin, Kornfeld, McMillin, Phillips & Upp, Oklahoma City, Okl., for plaintiffs.

Jack T. Crabtree, Buck, Crabtree, Groves & Ransdell, Oklahoma City, Okl., for defendant Quail Creek Bank-National Association.

William R. Burkett, U. S. Atty., and Jeff R. Laird, Asst. U. S. Atty., Oklahoma City, Okl., and Irving Jaffe, Acting Asst. Atty. Gen., Harland F. Leathers, Susan P. Engelman, Attys., Dept. of Justice, John E. Shockey and Lise S. Haupt, Attys., Office of the Comptroller of the Currency, for defendant James E. Smith, Comptroller of the Currency of United States.

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REQUIRE ADMINISTRATIVE OFFICIALS TO EXPLAIN BASIS FOR ACTION

CHANDLER, District Judge.

This action for Declaratory Judgment and other relief is brought to direct Defendant James E. Smith, Comptroller of the Currency of the United States, to withdraw a certificate of authority to engage in business as a national banking association issued to Defendant Quail Creek Bank-National Association, and to enjoin Defendant Bank from establishing and operating a bank under the provisions of said certificate.

Plaintiffs are two banks which appeared as Protestants in the administrative proceeding below. Plaintiffs have also moved to require Defendant Comptroller to explain the basis for his granting the application involved since he did not publish formal findings with his decision.

Since the circumstances presented here require a review of Defendant Comptroller's decision, the primary issue involved is the determination of the appropriate scope of, standard for, and method to be used in conducting, such a review.

In this regard, Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); and 5 U.S.C.A. § 706 are controlling.

The pertinent parts of 5 U.S.C.A. § 706 which sets out the scope and standards of review, are as follows:

"§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\*　　\*　　\*　　\*　　\*　　\*

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

It will perhaps be helpful to determine initially which of the statutory provisions, above, are inappropriate to the present case.

■ First, there is no claim that the Comptroller's decision is "contrary to constitutional right, power, privilege, or immunity" and it is clear that this Defendant did not act "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right".

Nor is the "substantial evidence" test applicable.

"Unquestionably, the Comptroller's action is subject to judicial review . . . But it is also clear that neither the National Bank Act nor the APA requires the Comptroller to hold a hearing or to make formal findings on the hearing record when passing on applications for new banking authorities [citations omitted] . . . Accordingly, the proper standard for judicial review of the Comptroller's adjudication is not the 'substantial evidence' test . . . " *Camp*, supra at 411 U.S. 140, 93 S.Ct. 1243, 36 L.Ed.2d 110.

■ Further, a reviewing court is not free to substitute its judgment for that of the Comptroller by way of a trial de novo under § 706(2)(D) and (F), above, in the usual case.

"It is quite plain from our decision in . . . [*Overton Park*, supra] . . . that de novo review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions . . . the only deficiency suggested in agency action or proceedings is that the Comptroller inadequately explained his decision. As Overton Park demonstrates, however, that failure . . . is not a deficiency in factfinding procedures such as to war-

rant the de novo hearing ordered in this case." *Camp*, supra, at 411 U.S. 141–142, 93 S.Ct. 1243–1244, 36 L.Ed. 2d 110, 111.

What the present case calls for, then, is the "plenary review" which the Supreme Court envisioned in *Overton Park*, supra, the standard for such review being that provided in § 706(2)(A), above.

■ The issue to be decided is thus whether the Comptroller's decision to grant the charter in question was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or, stated another way, whether the decision is without rational basis. Eastern Central Motor Carriers Association v. United States, 239 F.Supp. 591 (D.C. D.C.1965).

The focal point for such a review is the administrative record already in existence, not some new record made initially in the reviewing court. *Camp*, supra, at 411 U.S. 142, 93 S.Ct. 1244, 36 L.Ed.2d 111.

In a case like the present one, where the Comptroller has made no formal findings and a de novo review is inappropriate, the reviewing court is left with three alternatives.

First, if the lack of formal findings frustrates effective judicial review, the Court must remand the case to the Comptroller for formal findings. Judicial review is frustrated if the Court cannot determine the factors which formed the basis for the decision.

Secondly, the Court may obtain from the Comptroller, through affidavits or testimony, such additional reasons for his decision as may prove necessary to aid in the review.

Finally, if the lack of formal findings does not frustrate effective judicial review and the Court can determine the factors upon which the decision was based from the record alone, the Court may make its review of the administrative record under the appropriate standard even in the absence of formal find-

ings or subsequent explanation by the Comptroller.

Since the first two alternatives bring into play the possibility of inaccuracies born of the "post hoc rationalizations", as noted by the Court in *Overton Park,* the preferable course is the third alternative, above, if feasible.

Accordingly this Court must decide whether the absence of formal findings in the present case frustrates effective judicial review.

■ The Court believes that the factors forming the basis for the Comptroller's decision to grant the charter are obvious from the record before it. As shown by the hearing transcript and the recommendations made to the Comptroller (See R. 13–16), the principal factors were need and convenience, qualifications of the applicants, and possible harmful effects which a new bank in the area would bring upon the existing institutions by increasing competition. Accordingly, the Court finds that subsequent explanation by the Comptroller is unnecessary and Plaintiff's Motion To Require Administrative Officials To Explain Basis For Action should be denied.

■ The Court holds that, while the decision of the Comptroller was indeed a close one, it cannot be said that his action was taken arbitrarily or capriciously within the meaning of the statute, above. On the contrary, the record is replete with support for the decision, and while there is conflicting evidence, none of it is so strong as to warrant a reversal of the Comptroller's decision to grant the charter.

Further the Court would point out the following portions of the record which specifically support the granting of the charter:

First, as to the need and convenience factors, the feasibility study conducted by the Oklahoma City University Business Research Center (See R. 868–928) found that the projected trade area was experiencing rapid growth (See R. 874), that the area was primarily residential with the homes having an average value of $34,500.00 and an average age of 6 years and that such growth would continue (See R. 876, 877), that the area is one of the more affluent sections of Oklahoma County with an average family income of $19,521.00 (See R. 877), that retail sales are rising rapidly (See R. 877), that there are two large shopping centers in the area (See R. 878), that the location is on one of the primary north-south arteries in Oklahoma City (R. 879, 881), and that the proposed location is readily accessible to the public from that thoroughfare.

As to the qualifications of the organizers, it need only be noted that Mr. Robert L. Moser, the president of the proposed bank, has 19 years experience in the banking field, that all of the organizers, while lacking banking experience, are experienced businessmen, and that the Comptroller took cognizance of the need for experience in such an endeavor by requiring as a condition to the granting of the charter that "executive management acceptable to this Office will be provided" and that for the first year that the bank is open for business "any new director or officer must file Financial and Biographical Reports with the Regional Administrator". (See R. 9, 10) In general the stringent conditions imposed on the proposed bank indicate that serious examination of the record was made before the decision to grant the charter was finalized. (See R. 9–11).

And finally, as to the competitive factor, it is obvious that the Comptroller could find that, given the projected growth figures and the accelerated growth experienced by the area in the past, and the projected loan and deposit outlook (See R. 888–890), the new bank could effectively compete and realize a profit without endangering the already existing institutions in the surrounding areas.

Accordingly, Plaintiffs' Motion To Require Administrative Officials To Ex-

plain Basis For Action should be, and hereby is, denied.

The decision of the Comptroller of the Currency of the United States should be affirmed.

It is so ordered.