**HEMPSTEAD BANK, Plaintiff,**

v.

**James E. SMITH, Comptroller of the Currency of the United States, and the Chase Manhattan Bank National Association, Defendants.**

**No. 75 Civ. 171–LFM.**

United States District Court,
S. D. New York.

Feb. 4, 1976.

Dalton & Henoch by Gilbert Henoch, Hempstead, for plaintiff.

Milbank, Tweed, Hadley & McCloy by Andrew J. Connick, New York City, for The Chase Manhattan Bank, National Association.

Paul J. Curran, U. S. Atty., for the Southern District of New York by Nathaniel L. Gerber, Asst. U. S. Atty., New York City, for Comptroller.

## OPINION

MacMAHON, District Judge.

This action to set aside a decision of the Comptroller of the Currency, approving the application of The Chase Manhattan Bank ("Chase"), to establish a branch in Locust Valley, Nassau County, New York, is presently before us on cross-motions for summary judgment. Rule 56 Fed.R.Civ.P. Plaintiff, invoking the Administrative Procedure Act, 5 U.S.C. § 706, seeks review of the Comptroller's decision, contending that the approval was arbitrary, capricious, and an abuse of discretion. Summary judgment is appropriate since the entire administrative record is before us.[1]

Chase filed its application for permission to establish a branch in Locust Valley on August 6, 1974. Notice of the bank's application was published in The New York Times and Newsday, as well as the Weekly Bulletin of the Banking Department of the State of New York. Two commercial banks, Hempstead Bank and the Nassau Trust Company of Glen Cove, already had branches in the area, and both filed letters of protest with the office of the Regional Administrator of National Banks. The Nassau Trust Company requested a hearing on the application, but the request was denied as untimely. Plaintiff never requested a hearing.

The Regional Administrator of National Banks for the Second National Bank Region appointed a commissioned national bank examiner to investigate the Chase application. The examiner's study resulted in a report which included a population and economic profile of the community where the branch would be located and information as to the financial condition of Chase and of the two existing commercial banks in the Locust Valley area. The examiner talked to representatives of plaintiff and the Nassau Trust Company during his investigation, and their objections were included in his report.

The examiner recommended that the application be approved since the general affluence of the area and the benefit to

1. *Camp v. Pitts,* 411 U.S. 138, 142, 92 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *First Nat'l Bank of Fayetteville v. Smith,* 508 F.2d 1371 (8th Cir. 1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *First Nat'l Bank of Fairbanks v. Camp,* 151 U.S.App.D.C. 1, 465 F.2d 586 (1972), *cert. denied,* 409 U.S. 1124, 93 S.Ct. 936, 35 L.Ed.2d 255 (1973); *First Nat'l Bank of Crown Point v. Camp,* 463 F.2d 595 (7th Cir. 1972).

the community gained by the addition of a competing bank facility outweighed the factor that future business and population growth appeared to be minimal. That recommendation was reviewed and concurred in by the Regional Administrator of National Banks, the Director of the Comptroller's Bank Organization Division, and the Deputy Comptroller. The Comptroller approved the branch application on October 8, 1974.

Plaintiff first contends that since the Comptroller did not conduct a formal adversary hearing, his decision is invalid and the court must consider anew the branch application, making its own determination as to whether or not it should be granted. Plaintiff further contends that the facts presented clearly indicate that the application should be denied.

■ The scope of review open to this court, however, is quite limited. The law is clear that the Comptroller is not required to hold a hearing, to make formal findings, or to file an opinion. It is equally clear that this court should not try the issue de novo or substitute its judgment for that of the Comptroller. Decision by the administrative agency on an application to establish a branch bank must be sustained as long as there is a rational basis for the decision as established by the administrative record.[2]

The ninety-two page administrative record contains the results of the examiner's independent investigation of the financial health of both Chase and the commercial banks already established in Locust Valley,[3] and an economic and population profile of the residential and business community, as well as an estimate of any probable change in those statistics.[4] In addition, there are extensive economic and population data of-

fered by Chase, in support of the application, and by plaintiff, Hempstead Bank, and Nassau Trust Company,[5] in opposition. Defendant Chase estimated that the average family income was approximately $20,000 per year;[6] plaintiff estimated that the median income varied between $13,386 and $24,781.[7] There are 2,882 housing units in the area, generally owner occupied and with an average value of $41,000.[8]

■ We find, therefore, that there was an adequate factual basis in the record to support the Comptroller's decision that establishment of another competitive branch would benefit the community and that the affluence of the area indicated that the existing financial institutions would not suffer serious adverse effect.

Plaintiff next challenges the decision, contending that the Comptroller did not make the requisite findings under state law. Section 36(c) of the National Bank Act, 12 U.S.C. § 36(c), states that the Comptroller may approve a branch application only if the statute law of the state in question is satisfied. Section 29 of the New York Banking Law (McKinney 1971) requires that a branch will be approved "if [the superintendent] shall find upon investigation that the public convenience and advantage will be promoted . . . ." Plaintiff contends that the public convenience would not be promoted by the Chase branch, and, even if it were, the Comptroller did not make express findings or issue an opinion.

■ First, the language of Section 29 does not require written findings; it only directs that public convenience and advantage be considered before a branch application is approved. Further, it is clear that the Comptroller's conclusion that approval of the branch would stimu-

---

2. *Camp v. Pitts, supra; First Bank & Trust Co. v. Smith,* 509 F.2d 663 (1st Cir. 1975); *Village Bank v. Smith,* 388 F.Supp. 1253 (W.D.Okla. 1975); *Merchants & Planters Bank of Newport, Ark. v. Smith,* 380 F.Supp. 354 (E.D.Ark. 1974).

3. Administrative Record, pp. 6, 9, 14 and 15.

4. Administrative Record, p. 10.

5. Administrative Record, pp. 21–92.

6. Administrative Record, p. 66.

7. Administrative Record, pp. 41 and 45.

8. Administrative Record, p. 10.

late competition in the area is a decision made in the public interest.[9]

Plaintiff also contends that approval of the application violates Section 29.1 of the General Regulations of the New York State Banking Board. That section provides:

"Normally there should be a population of 5,000 persons per commercial bank facility within a reasonably defined service area. . . . In service areas of above average income or in service areas consisting primarily of working population, a reduction in the population requirement stated above shall be permitted. In residential service areas of lower than average income, a higher population shall be required."

The estimated population of the general service area—10,150[10]—would be divided among three commercial banks if Chase's application were approved. The ratio of persons to banking facility would, therefore, be lower than the 5,000 to 1 suggested by the General Regulations of the banking board.

■■ Regulation 29.1 does not, however, establish a mandatory ratio of one bank per 5,000 persons. It merely provides a guideline which may then be varied according to the economic health of the area. Although the approval of the Chase branch would result in a ratio less than that suggested by the regulation, it would still be permissible given the general affluence of the area.

Accordingly, there being no genuine issue as to any material fact, and the decision of the Comptroller being rational and in accordance with all applicable provisions of law, defendants' motions for summary judgment dismissing the action are granted in all respects. Plaintiff's cross-motion for summary judg-

ment against the defendants is denied in all respects.

So ordered.

---

9. *United States v. Phillipsburg Nat'l Bank & Trust Co.,* 399 U.S. 350, 358, 90 S.Ct. 2035, 26 L.Ed.2d 658 (1970); *Clermont Nat'l Bank v. Citizensbank Nat'l Ass'n,* 329 F.Supp. 1331 (S.D.Ohio 1971).

10. Administrative Record, p. 6.